David LYTLE, Jeanette Lytle, and
Joan Maguire, Plaintiffs,

v.

Charles BREWER, individually and in
his official capacity as Lieutenant of
the Norfolk Police Department;
Charles D. Griffith, Jr., in his official
capacity as Norfolk Commonwealth
Attorney, and Hon. James S. Gilmore,
III, in his official capacity as Gover-
nor of the Commonwealth of Virginia,
Defendants.

No. Civ.A. 2:99cv1366.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 22, 1999.

See also, --- F.Supp.2d ----.

Anthony S. Mulford, Davis & Brynteson, PC, Chesapeake, VA, Michael J. DePrimo, Stephen M. Crampton, Brian Fahling,

American Family Association Center for Law and Policy, Tupelo, MS, for plaintiff.

Jack E. Cloud, Harold P. Juren, City Attorney's Office, Norfolk, VA, for defendant Charles Brewer.

Kevin O. Barnard, Gregory E. Lucyk, William H. Hurd, Mark L. Earley, Office of the Attorney General, Richmond, VA, for defendant Charles D. Griffith, Jr.

Alison P. Landry, Kevin O. Barnard, Todd E. Lepage, Gregory E. Lucyk, William H. Hurd, Thomas J. Lambert, Mark L. Earley, Office of the Attorney General, Richmond, VA, for defendant Hon. James S. Gilmore, III.

## ORDER AND OPINION

FRIEDMAN, District Judge.

This case involves constitutional challenges to Virginia Code Section 46.2–930, which prohibits loitering on certain bridges designated by the Commissioner of the Virginia Department of Transportation. The complaint was filed on August 27, 1999, and on the same day the plaintiffs moved the Court for a preliminary injunction. On November 2, the Court granted a preliminary injunction preventing the enforcement of the challenged statute. On the heels of the plaintiffs' motion for preliminary relief, Lt. Charles Brewer, moved to dismiss the claims against him in his official capacity, and for summary judgment as to claims against him in his individual capacity.

The Court did not consider the merits of Brewer's motions during the review of the motion for preliminary relief because the briefing had not been completed. On November 3, the Court conducted a hearing on Brewer's motions and took the motions under advisement. The Court has since thoroughly considered the legal issues raised in Brewer's motions, and for the reasons set forth below, the Court hereby GRANTS the motions dismissing the claims against Brewer both in his individual capacity and in his official capacity.

## FACTUAL BACKGROUND

The general facts giving rise to the claims in this case were set forth in the Court's November 2 Opinion granting the plaintiffs' motion for preliminary relief. However, additional facts more specific to Brewer and his involvement with the July 16 protest as the police officer from the Norfolk Police Department in charge are necessary for the Court's review of the pending motions. The facts set forth below are taken from the plaintiffs' complaint, and where summary judgment is at issue, the facts are additionally taken from Brewer's affidavit submitted in support of his motion for summary judgment, the video of the July 16 protest and arrest submitted by the plaintiffs in opposition, along with the attached affidavits of plaintiffs' counsel, Michael DePrimo, the videographer, Ronald Brock, and a fellow protestor, Dennis Greene.

On July 16, Brewer, a police officer with more than 25 years of experience, was notified by the police dispatcher that there was a group of protestors located on the Piccadilly Overpass in Norfolk. After informing his supervisors of the ongoing protest, Brewer was instructed to proceed to the scene of the protest and to order all protestors to either leave or face charges under Virginia's Code Section 46.2–930. Brewer claims that until his discussions with his supervisor on July 16, he was not aware of this statute.

Brewer submits that prior to leaving the police station, he made copies of Section 46.2–930 for the protestors he anticipated. By the time Brewer arrived at the overpass, a Virginia state trooper had already arrived. Brewer noted the existence of "No Loitering" sign at each entrance to the overpass. Brewer claims that he observed the traffic traveling below the overpass at 4:30 p.m. on July 16, and that it was "heavy," presumably indicative of a normal rush hour traffic on Interstate 64. Brewer claims that when he arrived, traffic was beginning to "back up" and that he heard several cars with tires "squealing."

The majority of the protestors on the overpass were either carrying or had posted on the overpass large signs, some depicting pictures expressing their opposition to abortion. The signs were propped against the overpass fencing and were directed at the oncoming traffic. Brewer claims that based on his observations, he believed the protestors were intentionally attempting to distract the cars traveling on the Interstate. After observing the scene, Brewer, together with the Virginia State Trooper, approached the protestors, and provided each protestor with a copy of Va.Code Ann. § 46.2–930, the anti-loitering statute applicable to designated bridges. As set forth fully in the Court's November Opinion, after receipt of a copy of the challenged statute and some explanation from Lt. Brewer, the plaintiffs ceased their protest and vacated the pedestrian bridge. However, two of their fellow-protestors not party to this case refused to cease protests and as a result, were arrested by Lt. Brewer.

Based on the posted signs and his instructions from his supervisor, Brewer submits that on July 16 he believed that the challenged statute was in effect as to the overpass in question. He additionally claims that he was unaware of any case law or precedent regarding the validity of similar loitering statutes. Finally, and not surprisingly, Brewer claims that he has not received training regarding the constitutionality of the statute. However, subsequent to events on July 16, on August 30, Brewer was informed that the Norfolk City Attorney had instructed the Police Department to cease enforcement of the statute. Brewer also states that he was present in the Norfolk District Court on September 9, 1999, when the charges pending against the two protestors who had been arrested on July 16 were nolle prossed.

Brewer's motion to dismiss has two focuses. First, as to the claims against Brewer in his individual capacity, he argues that the claims should be dismissed and summary judgment should be granted pursuant to the doctrine of qualified immunity. Second, as to the claims against Brewer in his official capacity, he argues that the plaintiffs have failed to state a claim for which relief can be granted, and even if they had, that he is not the proper defendant as a policy maker for the City of Norfolk.

## ANALYSIS

### I. Standards of Review

#### A. Motion for Summary Judgment

Brewer moves for summary judgment as to the claims pending against him in his individual capacity; *i.e.*, those claims related to Brewer's actions on July 16 contained in Counts 1 and 2. Specifically, Brewer requests that the Court grant summary judgment based on a finding of qualified immunity.

The standard for granting summary judgment is met if after a review of all of the pleadings, depositions, affidavits and other documents submitted by the parties, the court finds that there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Roe v. Doe*, 28 F.3d 404, 406 (4th Cir.1994). To find against the movants, the Court must find both that the facts in dispute are material and that the disputed issues are genuine. As for materiality, the factual dispute must be dispositive of the claim. *See Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, the genuineness of the factual dispute must be more than a dispute based on speculation or inference. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (finding *inter alia* that a complete failure of proof on an essential element of the claim may render the facts immaterial); *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997).

In support of their conflicting positions, Brewer, submitted an affidavit, and the

plaintiffs submitted a video of the protest and subsequent arrest by Brewer. In considering the motion for preliminary relief, the Court reviewed both of these evidentiary items. In the plaintiffs' opposition memorandum to Brewer's motion, the plaintiffs specifically referred to facts outside of the pleadings and made certain arguments regarding "disputes of fact." However, at the hearing on this matter, the plaintiffs objected to Brewer's motion for summary judgment, and asked the Court to defer a decision until the completion of discovery. Based on the analysis that follows, the Court finds that summary judgment is appropriate as to the claims for individual liability and that discovery will not change the Court's determination.

### B. *Motion to Dismiss*

Brewer has additionally moved to dismiss the official capacity claims pending against him pursuant to Fed.R.Civ.P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim for which relief can be granted, the facts should be taken as true and construed in the light most favorable to plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal should be granted when movant demonstrates that the plaintiff's allegations cannot support the claims brought even in the light most favorable to the plaintiff. *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083 (4th Cir.1979).

### II. *Brewer in His Individual Capacity*

■ Brewer argues that he is entitled to qualified immunity regarding the plaintiffs' claims that he personally violated their constitutional rights. Qualified immunity protects government officials performing discretionary functions from civil liability so long as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person should have known. *Winfield v. Bass,* 106 F.3d 525, 530 (4th Cir.1997). As is always the case, immunity should be established,

if it is appropriate, before the trial on the merits. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *DiMeglio v. Haines,* 45 F.3d 790, 795 (4th Cir.1995). Brewer argues that if the plaintiffs' rights were violated, they were not clearly established, and therefore, he should be entitled to qualified immunity.

The plaintiffs responded to the defendant's motion by setting forth the facts they claim are in dispute and prohibit summary judgment for the claims of individual liability. The alleged disputed facts include: (1) whether Brewer should have known that the plaintiffs' activities were protected under the First Amendment, (2) whether Brewer should have known the challenged statute was unconstitutional, (3) whether the plaintiffs' protest caused a safety hazard, and (4) whether Brewer acted with deliberate indifference to the plaintiffs' rights by making a decision to threaten arrest prior to his arrival and assessment of the protest. However, these supposedly disputed facts do not prohibit the entry of summary judgment. First, each of the "disputed facts" actually amounts to a dispute of law which is addressed and resolved herein. Second and also addressed herein, even the Court found that the third and fourth disputes were factual rather than legal, still summary judgment would be appropriate because the disputes are not clearly material to the issues before the Court.

■ The Supreme Court analyzed the standards for granting qualified immunity earlier this year in *Conn v. Gabbert,* 526 U.S. 286, ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), and found that prior to determining the usual questions of whether a law was clearly established and whether the officer's actions were reasonable in light of the law, a court evaluating a claim of qualified immunity *"must* first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Id.* (emphasis added). If the plaintiff has properly alleged a violation of

a constitutional right, then the court must go on to determine whether the right was clearly established at the time of the alleged violation. *Id.* The Supreme Court has stressed that the order of consideration is necessary to "promote clarity in legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson v. Layne,* 526 U.S. 603, ——, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 840–842, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)); *see B.C. v. Plumas Unified School Dist.,* 192 F.3d 1260 (9th Cir.1999) (following *Wilson* and determining constitutional question based on plaintiff's asserted facts prior to addressing asserted immunity defense); *Cline v. Binder,* 187 F.3d 628, 1999 WL 507199, \*2 (4th Cir.1999) (unpublished) (same except review of summary judgment decision); *Wilkinson ex rel. Wilkinson v. Russell,* 182 F.3d 89, 105–107 (2d Cir.1999) (same). Following the Supreme Court's guidance on the order in which the court should consider the legal issues in this case, the Court's analysis of Brewer's claim of qualified immunity is below.

### A. *Whether Brewer's Conduct Violated the Plaintiffs' First Amendment Rights*

The plaintiffs' claims against Brewer are that he violated their First Amendment rights to freedom of speech and freedom to exercise religious beliefs when he enforced Virginia Code Section 46.2–930 on July 16, and ordered the plaintiffs to cease and desist in their protesting efforts. *See* Counts 1 and 2. For their claims against Brewer in his individual capacity, plaintiffs seek nominal and punitive damages. *See* Prayer for Relief ¶ (f).

The uncontroverted evidence in this case is that Brewer, pursuant to the instruction from his supervisor, proceeded to the scene of the protest intending to threaten and if necessary, arrest the protestors pursuant to Virginia Code Ann. § 46.2–930. In order to determine whether the plaintiffs' First Amendment rights were violated by Brewer's actions on July 16, the Court must engage in a two-part inquiry.

First, the Court must determine whether the plaintiffs' speech was protected by the First Amendment. Courts have consistently held that peaceful picketing and protesting are forms of expression protected by the First Amendment. *See United States v. Grace,* 461 U.S. 171, 176, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Hoffman v. Hunt,* 126 F.3d 575, 581 (4th Cir. 1997) (reviewing application of abortion statute which prohibited obstruction of entry and exit of abortion clinic to protestor's threatened arrest), *cert. denied,* 523 U.S. 1136, 118 S.Ct. 1838, 140 L.Ed.2d 1089 (1998). Additionally, when speech, such as public issue picketing, is limited by a statute, either on its face or as applied, the courts must carefully scrutinize the restrictions. *Boos v. Barry,* 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (citations omitted); *Gitlow v. People of State of New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925) (applying the same principles to state statutes or ordinances). Indeed, public speech through picketing represents "an exercise of … basic constitutional rights in their most pristine and classic form and … has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown,* 447 U.S. 455, 466–67, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *see also Parcham v. Immigration and Naturalization Service,* 769 F.2d 1001, 1004–1005 (4th Cir.1985) (limiting demonstration rights to "peaceful" demonstrations). There is no dispute regarding the plaintiffs' activities on July 16. They were engaged in peaceful picketing and protesting on the pedestrian overpass. Therefore, the Court FINDS that the plaintiffs' actions on July 16 constitute normally protected First Amendment speech.

Second, the Court must determine whether Brewer's actions in impeding the plaintiffs' exercise of First Amendment speech were justified. This analysis is more complicated that the previous discus-

sion of the protected nature of the speech. A determination on this issue "requires the weighing of two factors: (1) the type of forum where the speech takes place, and (2) the nature of the governmental restriction." *Shopco Distribution Co., Inc. v. Commanding General of Marine Corps Base, Camp Lejeune, North Carolina,* 885 F.2d 167, 171 (4th Cir.1989) (citations omitted).

■ Under *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the reasonableness of a restriction on protected speech on governmental property depends on whether the property is a traditional public forum, a created public forum, or a non-public forum. *Id.* at 45–46, 103 S.Ct. 948. "Traditional public forums, such as public parks and streets, are subject to sweeping constitutional protections." *Shopco,* 885 F.2d at 171. In these fora, content neutral restrictions, such as Virginia Code Ann. § 46.2–930, survive "so as long as they are narrowly tailored to serve a significant governmental interest and must leave open ample alternative avenues of communication." *Id.* (citing *United States Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 132, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981)). Courts have consistently found that public sidewalks constitute traditional public fora justifying narrowly tailored statutes serving a significant governmental interest. *See Boos,* 485 U.S. at 321–22, 108 S.Ct. 1157 (applying the review for public fora to restriction on picketing on sidewalks in front of foreign embassy); *Warren v. Fairfax County,* 196 F.3d 186 (4th Cir. 1999) (noting sidewalks as a traditional public forum).

■ A "created public forum" is a place which the government opens to the public as a place for expressive activity. *Id.* (citing *Perry,* 460 U.S. at 45–46, 103 S.Ct. 948). Examples of created public forums are school board meetings and municipal theaters. *Id.* Once the government creates and opens a forum for expression, the same review applies as does in a tradi-

tional public forum setting when a restriction on speech is challenged. *Id.* Finally, a non-public forum is a place that has not been opened for public use, such as a correctional institute, military base, or the mail room at a public school. *Id.* In non-public fora, the government may impose time, place and manner restrictions, and "reserve the forum for its intended purpose, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's views." *Id.*

■ In this case, the speech at issue occurred on a pedestrian walkway, or catwalk, which passes over an major roadway, Interstate 64. Significantly, nothing in the record indicates that the overpass was built for anything other than for what is expected—to aid the general public in crossing over the highway, similar to a sidewalk which protects pedestrians from traffic. *Cf. United States v. Kokinda,* 497 U.S. 720, 726–27, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (regarding sidewalks built for the sole purpose of conducting government business). Having no basis to find otherwise, the Court FINDS that the pedestrian crosswalk at issue in this case, the Piccadilly Overpass, is most akin to a public sidewalk or street, and therefore, must be considered as a traditional public forum. As a result, the Court must determine whether Brewer's actions, which were taken pursuant to Virginia Code Section 46.2–930 were narrowly tailored to serve a significant governmental interest.

As dictated by *Shopco,* the Court must additionally determine the nature of the government restriction, in this case Brewer's application of Virginia Code Section 46.2–930. *Shopco,* 885 F.2d at 171. The content of the plaintiffs' conduct on July 16 is not disputed and is largely irrelevant— they were pro-life abortion protestors expressing their anti-abortion related speech on the Piccadilly Overpass in Norfolk. Notably, Virginia Code Section 46.2–930 does not make it illegal to protest certain

messages, and no where in the record is it alleged that Lt. Brewer threatened the plaintiffs and ordered them to stop protesting based on the content of their speech. Therefore, the content of their speech, whether pro-life or pro-choice, is not at issue. *See Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.,* 502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (finding that the popularity or offensiveness of speech does not impact its protected status). Instead, Brewer's actions are a classic example of what is commonly referred to as "content neutral" restriction. Based on the record before the Court, Brewer merely sought to prevent "loitering" on a bridge that he believed was designated by the Commonwealth pursuant to Section 46.2–930. *See Shopco,* 885 F.2d at 172 (finding that military's policy was viewpoint neutral); *cf., Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (finding that regulations enacted for the purpose of banning speech on the basis of content presumptively violate the First Amendment). "Content neutral" restrictions are acceptable as long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication. *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

■ While Brewer's actions were presumably content neutral, two issues concerning Brewer's conduct on July 16 and his attempts to enforce the challenged Virginia statute trouble the Court. First, as this Court previously found in its consideration of the plaintiffs' motion for preliminary relief, the plaintiffs were not loitering, under an ordinary definition of what it means to "loiter." *See* November 1, 1999 Opinion. On July 16, Brewer proceeded to the scene of the plaintiffs' protest with a copy of Virginia Code Section 46.2–930 in hand, and with the intent to challenge the plaintiffs' conduct as loitering and order that they cease their protest. As he planned, Brewer arrived at the overpass and threatened the plaintiffs with arrest under Virginia Code Section 46.2.–930, which without definition or inclusion of specific intent provision, prohibits loitering on designated bridges in the Commonwealth. The plaintiffs ceased their First Amendment speech at the direction of Brewer. However, they were not loitering.

Second, the Commonwealth submitted at the time of the preliminary injunction hearing that while undisputedly there was a sign posted prohibiting loitering, the pedestrian crosswalk on which the loitering occurred had not been officially designated pursuant to Virginia Code Section 46.2–930. Notably, the counsel for the Commonwealth effectively conceded that to this extent, the plaintiffs were improperly threatened with arrest. *See* Transcript of PI Hearing at 32. For these two reasons, application of Section 46.2–930 to the plaintiffs' protesting activities presents serious constitutional questions outside of the constitutionality of the challenged statute. *Hoffman,* 126 F.3d at 582. That is, when Brewer ordered the plaintiffs to cease and desist in their protesting pursuant to Virginia Code Section 46.2–930, he was acting outside of the scope of the Virginia statute, which applies to loitering, not protesting, and in any event, did not apply to the bridge where the plaintiffs were protesting. Brewer's threats quelled the plaintiffs' speech in violation of the First Amendment.[1]

Therefore, to reiterate the Court's findings set forth above, the Court FINDS that the plaintiffs' conduct on the date of the threatened arrest, *i.e.,* picketing and posting signs on the overpass expressing

---

1. In this Opinion, the Court specifically declines to rule on the constitutionality of the challenged statute. Instead, this Opinion is limited to the constitutionality of Brewer's application of the statute and his conduct generally. The constitutionality of the statute was addressed in a preliminary matter in this Court's November Opinion, and it will be more fully addressed at a later date, likely in the context of a dispositive motion filed by the official defendants.

their opposition to abortion, constituted speech normally protected by the First Amendment. Furthermore, the Court FINDS that when Brewer threatened the plaintiffs with arrest under Va.Code Section 46.2–930, and thereby impeded their exercise of protected speech by applying the statute against them (whether properly or not), he violated the plaintiffs' constitutional rights to freedom of speech, and perhaps their Due Process "liberty" rights, as defined by the Supreme Court in *City of Chicago v. Morales,* 527 U.S. 41, ——, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). Having so made the determination that the plaintiffs' constitutional rights were violated by Brewer's actions, the Court must now determine whether Brewer is nonetheless entitled to qualified immunity.

B. *Whether the Law was "Clearly Established"*

■ Although the Court finds that the police action challenged in this case violated the plaintiffs' First Amendment rights, still Brewer may be entitled to qualified immunity if the Court finds that the law was not clearly established at the time of the alleged violation. As explained above, government officials are entitled to qualified immunity as a defense to civil liability insofar as their conduct does not violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court recently reiterated that "what this means in practice is that 'whether an official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Wilson,* 119 S.Ct. at 1699 (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Supreme Court explained that for the right to be "clearly established" it need not be shown that the "very action in question has been held unlawful, but it is to say that in the light of

the pre-existing law the unlawfulness must be apparent." *Wilson,* 119 S.Ct. at 1699 (citing *Creighton* ); *Edwards v. City of Goldsboro,* 178 F.3d 231, 250 (4th Cir.1999) (denying officers' request for qualified immunity in First Amendment case). Furthermore, the Fourth Circuit has repeatedly held that to determine whether a right was clearly established at the time of the alleged violation the court need not look farther than the decisions of the Supreme Court, the Fourth Circuit Court of Appeals, and the highest court in the state, the Virginia Supreme Court. *Edwards v. City. of Goldsboro,* 178 F.3d 231, 250 (4th Cir.1999) (quoting *Jean v. Collins,* 155 F.3d 701, 709 (4th Cir.1998) (en banc), *vacated,* —— U.S. ——, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999) (vacating with direction to *Wilson v. Layne* )).

In the context of the Fourth Amendment, the Court recently noted that it could be said that any violation of the Fourth Amendment is clearly established. *Wilson,* 119 S.Ct. at 1699. Likewise, the protections of the First Amendment and the liberty interests protected by the Due Process Clause are so basic to our society's structure, that some would say any arrest based on the expression of speech or on mere loitering is clearly established as violative of the First Amendment and the Due Process Clause. *See Thornhill v. Alabama,* 310 U.S. 88, 101–102, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). However, as the Court reiterated in *Wilson,* "the appropriate question is the objective inquiry of whether a reasonable officer could have believed that" the his or her actions would amount to a violation of the plaintiffs' constitutional rights based on the clearly established law at the time of the challenged action.

In this case, Brewer argues that the constitutionality of Section 46.2–930 was not clearly established at the time of the arrest and threatened arrests of the plaintiffs. Specifically, because the Section 46.2–930 had not bèen officially adjudicated as unconstitutional in July 1999, Brewer argues that he is entitled to qualified

immunity. As the plaintiffs have suggested, the Court believes the defendant has misguided the inquiry. Rather, the appropriate question is whether in 1999 a reasonable officer could have believed that arresting or threatening the plaintiffs with arrest for their anti-abortion protest conducted on a pedestrian crosswalk under a state-enacted loitering law was unlawful, based on the clearly established law regarding First Amendment rights.[2] While the constitutional questions surrounding a person's First Amendment rights are by no means elementary, the Court FINDS based on the law outlined above that in July of 1999, a person had a clearly established right to protest their individual beliefs on traditional public fora, such as sidewalks and pedestrian crosswalks, without fear that their actions would be subject to the criminal confines of a state-enacted loitering law.

C. *The Reasonableness of Brewer's Actions*

■■■ Based on the above findings that the plaintiffs' First Amendment rights were violated and that their rights were clearly established in July 1999, the Court must now determine whether Brewer's conduct is nonetheless protected by qualified immunity based on his objective reasonableness. *See Wilson,* 119 S.Ct. at 1699; *Sigman v. Chapel Hill,* 161 F.3d 782, (4th Cir.1998) (judging officer alleged to have used deadly force on an objective reasonableness standard and granting qualified immunity) (*citing Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Brewer argues that he did not, and a reasonable officer would not have, realized

under the circumstances in this case that threatening the arrest of the plaintiffs under a valid Virginia statute could constitute a violation of their First Amendment rights. This Court agrees. Several aspects of the factual background of this case convince the Court that Brewer's actions were reasonable. First, Brewer relied on the authority of the legislature and its enactment of constitutional laws. In *Grossman v. Portland,* 33 F.3d 1200, 1209 (9th Cir.1994), the Ninth Circuit held that an officer is entitled to qualified immunity when he or she reasonably relies on a duly enacted law that a reasonable officer could believe is constitutional, even if the law is later held to be unconstitutional. *Id.* (citing *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). The court noted that "courts have accordingly held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Id.* at 1209. The Ninth Circuit, however, limited its holding to the extent that an officer would not be entitled to immunity in cases where the statute authorizes conduct which "is patently violative of fundamental constitutional principles," or where an officer unlawfully enforces a statute in a particularly egregious manner.[3] *Id.* at 1209–1210. Furthermore, the Fourth Circuit has similarly granted qualified immunity where state officials were merely enforcing a presumptively valid state statute. *See Swanson v. Powers,* 937 F.2d 965, 969 (4th Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 777 (1992). Like the officers sued in *Swanson* and *Grossman,* in this case, Brewer was reasonable

---

**2.** While submitting that this is not the proper inquiry before the Court, the plaintiffs nonetheless argue that Brewer should have known that the unconstitutionality of the loitering laws was clearly established based on the Virginia Court of Appeals case, *Coleman v. City of Richmond,* where the court found a Richmond loitering ordinance unconstitutional. 5 Va.App. 459, 464, 364 S.E.2d 239, 242 (1988). The Court finds this argument unpersuasive. If this were the sole basis for the

plaintiffs' opposition to the motion to dismiss, the Court would end its analysis here and grant qualified immunity to Brewer.

**3.** The court gave the Holocaust and the My Lai massacre as examples of when an officer should not be shielded by qualified immunity "simply because they were enforcing policies or orders promulgated by those with superior authority." *Grossman,* 33 F.3d at 1209.

in his assumption that Va.Code Ann. § 46.2–930 was a constitutional statute, and even if it did not specifically apply to the conduct the plaintiffs were engaged in, he was reasonable, based on the circumstances and the language of the statute, in assuming that it did.

Second, Brewer was not a renegade police officer that located an obscure and unused statute and made an impromptu decision to enforce the law. Rather, Brewer's actions were based on his immediate supervisor's specific instructions that "persons loitering on the pedestrian bridge ... who refused to leave were to be charged under Virginia Code § 46.2–930." Brewer Affidavit at ¶ 4. As the Supreme Court acknowledged in *Pierson*, "a policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty [if he does not follow his supervisor's orders] ... and be mulcted in damages if he does." *Pierson*, 386 U.S. at 555, 87 S.Ct. 1213. Brewer had not received any specific training regarding the challenged statute, and was in no position at the time of receiving his orders from his supervisor to question the validity of the law in Virginia.

Third, Brewer submits that the scene at the Overpass justified his reaction and reliance on the statute. Brewer claims that when he arrived the protestors were causing a traffic safety hazzard. The plaintiffs specifically dispute this factual assertion made by Brewer, and use this alleged factual dispute as a basis for their opposition to summary judgment. The plaintiffs rely on their attached video tape in support of their dispute as to whether there was a safety hazard posed by their conduct. The Court does not find the factual dispute regarding the highway safety on the date of the arrest a factual dispute which would prevent the entry of summary judgment. On a claim of qualified immunity, whether the police officer's actions were justified according to the plaintiff's perspective is not the appropriate inquiry. Instead, the reasonableness of the officer's conduct is judged based on the perspective of the officer, and should be decided as a matter of law. *Wilson*, 119 S.Ct. at 1699 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action."); *Sigman*, 161 F.3d at 786–787; *see also Wilkinson v. Russell*, 182 F.3d at 103.

In *Sigman*, the Fourth Circuit was presented with a case where an officer shot and killed a suspect based on the officer's belief that the suspect presented a danger to his life and to the life and safety of others. *Sigman*, 161 F.3d at 784. The parents of the deceased suspect sued the police officers, and on the officer's motion for summary judgment, the plaintiffs submitted affidavits of witnesses to the shooting who stated that the suspect approached the officers with his hands raised, and disputed the officer's statement that he believed that the suspect possessed a knife and was prepared to harm the officers. *Id.* at 785. In considering this alleged factual dispute, the Fourth Circuit held that whether the suspect had a knife or presented a danger to the officers did not create a material fact in dispute for the purposes of summary judgment, or a triable issue. *Id.* Instead, the court held that "what matters is whether the officers acted reasonably ... and whether they undertook an objectively reasonable investigation with respect to the information in light of the ... circumstances they faced." *Id.* at 787–788. Similarly in this case, the plaintiffs' and Brewer's opposing opinions as to the safety of the traffic traveling below the plaintiffs' protest on Interstate 64 does not create a material factual dispute or a triable issue. Rather, like in *Sigman*, the Court can and does find as a matter of law that Brewer acted reasonable under the circumstances.[4]

---

4. The Court need not make a factual determination as to the actual safety of the plaintiffs' actions on July 16. As set forth in the Court's November Opinion, the Court has grave concerns regarding the wisdom of picketing directly above interstate traffic with the specific

Finally, based on the undisputed facts before the Court including the plaintiffs' video of the events that occurred on July 16, Brewer's actions at the overpass were reasonable. From the facts before the Court, he remained calm, acted professionally, and courteously undertook the arrest of the protestors after warning each protestor and providing each protestor with a copy of the statute prior to any arrests. Had Brewer been unnecessarily forceful or violent toward the protestors, perhaps the Court would not consider Brewer's conduct and reliance on the statute as reasonable.

Based on the specific circumstances in this case, the Court finds that Brewer's actions on July 16 were objectively reasonable, and that Brewer is entitled to qualified immunity for the claims pending against him in his individual capacity. Therefore, Brewer is DISMISSED from this action to the extent he is sued in his individual capacity.

## II. *Brewer in his Official Capacity*

 As set forth above, Brewer is additionally sued in his official capacity as Lieutenant of the Norfolk Police Department. Suing a governmental official in his or her official capacity is essentially the same as suing the government itself. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citations omitted). Therefore, when the plaintiffs name Brewer "officially," they in fact are suing the City of Norfolk, or the Norfolk Police Department. As a result, this Court must determine whether the plaintiffs can maintain their claims as claims against the municipality.

 Under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it is established that municipalities cannot be held liable pursuant to respondeat su-

perior for the constitutional violations of their employees. *Id.* at 692–94, 98 S.Ct. 2018. Instead, to establish municipal liability it must be shown that the city policy is at the crux of the injury alleged. *Id.* at 694, 98 S.Ct. 2018. Municipal policies can be either formal or informal. *Edwards v. City of Goldsboro*, 178 F.3d at 244 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir.1987), *cert denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988)). Under certain circumstances, a municipal policy may be shown by a single decision by a municipal policy maker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In a case such as this, the plaintiffs must show that there is a municipal policy or custom instituted by the City which caused their injuries. Additionally, the plaintiffs must establish an affirmative link between the alleged municipal policy and the allegedly abridged constitutional rights. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018.

### A *Whether Brewer is an Official Policy Maker*

 As an initial matter, in support of his motion to dismiss, Brewer argues that he is not the proper party to represent the City of Norfolk or any other official entity in this case. "Whether a particular defendant has final policy making authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 & 124 n. 1, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292) (expressly denied the approach suggested by Justice Brennan in his concurrence suggesting that state law is an "appropriate starting point" for an "assessment of a municipality's actual power structure"). The identification of the final policy matter is a legal question appropriately resolved through dispositive motions. *See Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (clarifying *Praprotnik*); *Flickinger v. School Bd. of City of Norfolk, Va.*, 799

intent of distracting drivers traveling below the overpass.

F.Supp. 586, 590 (E.D.Va.1992); *see also Keathley v. Vitale,* 866 F.Supp. 272, 274–75 (E.D.Va.1994) (applying the *Jett* reasoning on a motion to dismiss, and concluding that even though plaintiff alleged that an individual had final decision making authority, according to state law, the individual did not possess final decision making authority).

In support of his motion to dismiss the official capacity claims, Brewer points the Court to the Norfolk City Charter, which provides that City's director of public safety is in charge of the police department. *See* Charter at §§ 59–60 (attached Brewer's Memo in support of MSJ). Furthermore, pursuant to the Norfolk City Code, the City Manager acts as the director of public safety. Norfolk City Code, § 2–33.1 (attached to Brewer's Memo). Based on the City Charter and the City Code, the defendant argues that if any individual could be sued in this case for the municipal policies of the City of Norfolk or its police department, it would be the city manager.[5] This Court agrees.

Based on the information contained in the City Charter and City Code, the Court FINDS that Brewer was not properly named in his official capacity, and the claims against him in his official capacity must be dismissed.

### B. *Whether the Claims are Sufficiently Plead*

Second, Brewer (or the City) argues that even if the proper party were named, still the plaintiffs' municipal policy claims fail because the plaintiffs have failed to properly allege a municipal policy of violating citizen's First Amendment rights. In rebuttal, the plaintiffs contend that it is the "policy" of the City to enforce the statutes of the Commonwealth, including Section 46.2–930. Because the plaintiffs contend that Section 46.2–930 is unconstitutional, the plaintiffs argue that the City's policy of enforcing the law is also unconsti-

tutional, and that it should be held liable. The plaintiffs correctly assert that a municipal policy can be established, under certain circumstances, by a single act. However, the plaintiffs miss the final caveat of the legal premise on which they rely—the single act must be somehow related to the "a final decision maker" or "policy maker" in order for the act to substantiate a municipal policy. *See Praprotnik,* 485 U.S. at 125, 108 S.Ct. 915; *see also Greensboro Prof. Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962 (4th Cir.1995) (distinguishing between final decision making power and final policy making authority).

It is well recognized that pleading standards should not be increased based on the naming of a party in his or her official capacity or by the naming of a municipality. The plaintiffs rely on *Jordan by Jordan v. Jackson,* 15 F.3d 333, 339 (4th Cir.1994), among other Fourth Circuit cases. However, the Court finds that the most recent and relevant case in this regard is the Fourth Circuit's opinion in *Edwards v. City of Goldsboro.* 178 F.3d at 244. In *Edwards,* the court held that the complaining police officer who had filed suit against his supervisors and the City, need do nothing more than "set forth a plain statement of his claims giving the City fair notice of what his claims [were] and the grounds upon which they [rested]." *Id.* (finding that the claims contained in the plaintiff's amended complaint were sufficient to survive a Rule 12(b) motion to dismiss). In *Edwards,* the plaintiff alleged that the City delegated authority to its agents and employees, including the defendants, "to formulate, develop, and administer employment and personnel policies and practices for the City, including those policies and practices that caused" the alleged injuries to plaintiff. *Id.* at 245. Additionally, the plaintiff alleged that the acts complained of represented the official policy of the City, and

---

**5.** In Brewer's motion to dismiss, James Oliver is identified as Norfolk's current City Manager. However, the August 1999 letter in this case from the City agreeing to the suspension of the challenged statute is from the City Attorney's office, not the City Manager.

that the official policy-maker's decision to uphold his supervisor's decision was a final decision of the City. *Id.* The Fourth Circuit found that the plaintiff's allegations were sufficient to survive the motion to dismiss, and reversed the District Court's dismissal.

The Court has reviewed the allegations against Brewer in his official capacity. The plaintiffs allege that "all of the acts of the Defendants ... were conducted under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the City of Norfolk and/or Commonwealth of Virginia." *See* Complaint ¶ 25. The plaintiffs concede that Paragraph 25 is the only paragraph addressing municipal liability. However, they argue that it is sufficient to form the basis of a claim under Section 1983.[6]

The Court recognizes the pleading standards for claims against municipalities, and does not imply in this ruling that there is a heightened pleading standard where claims are made against municipalities. *Edwards,* 178 F.3d at 245; *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, taking into consideration the lenient pleading standards, the plaintiffs have nonetheless failed to satisfy their burden to withstand Brewer's motion to dismiss on two grounds. First, as set forth above, Brewer is not an official policy maker, or final decision maker for the City of Norfolk. Second, even if Brewer was a properly named defendant and policy maker for the City of Norfolk, the facts plead in the Complaint do not sufficiently set forth facts supporting a claim against a municipality or official entity of the City. Paragraph 25's single assertion that all of the acts alleged in the Complaint occurred pursuant to the City's custom, etc., is not sufficient to put the a municipal defendant

on notice of the claims alleged. *Edwards,* 178 F.3d at 245.

For these two reasons, the claims against Brewer in his official capacity are DISMISSED without prejudice. However, the Court will look favorably upon plaintiffs should they file a timely motion to amend their complaint to properly name the appropriate City officials, and to replead their allegations against a municipal defendant.

### CONCLUSION

For the reasons set forth above, the Brewer's motion to dismiss is GRANTED.

It is so ORDERED.

The Clerk is DIRECTED to send a copy of this Order and Opinion to all counsel.

---

6. The plaintiffs additionally argue in their legal memorandum that it is the City's policy to enforce the law enacted in Virginia, and that the City has an inadequate training program for its officers, and therefore, should be held liable as a municipality. The defendants argue at length as to whether such a claim or similar claims can survive a motion to dismiss for failure to state a claim. *See* Brewer's Reply Memo. at pp. 5–9, 12–15. However, these allegations are not contained in the Complaint before the Court.