761 So.2d 383 (2000)
Clifford B. THOMASSET, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-2309.
District Court of Appeal of Florida, Second District.
April 28, 2000.
*384 Joseph J. Registrato, Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jenny S. Sieg, Assistant Attorney General, Tampa, for Appellee.
SCHEB, JOHN M., (Senior) Judge.
Clifford B. Thomasset pleaded nolo contendere to possession of cocaine, and the trial court placed him on probation. Thomasset reserved the right to appeal the trial court's denial of his motion to suppress the cocaine on the ground that it was seized as a result of an illegal stop. We agree that the stop was illegal. We reverse.
At the hearing on Thomasset's motion to suppress, only the arresting officer, Hillsborough County Deputy Sheriff Travis Valles, and Thomasset testified. Deputy Valles stated that at approximately 11:20 p.m. on March 26, 1998, while in uniform and in a marked police unit, he was conducting surveillance in an area in Tampa where officers had received complaints of ongoing drug activity. The area of his surveillance included a liquor lounge and its adjacent parking lot. While the bar was still open, the deputy observed a male sitting in a Jeep Cherokee where patrons normally parked. After observing the vehicle for about fifteen minutes, his suspicions were aroused. He knocked on the window of the vehicle, identified himself as an officer, and asked for and examined the *385 occupant's driver's license. Another deputy stood on the passenger side of the vehicle. While Deputy Valles checked out the occupant's driver's license, the other deputy covered him from the other side. Both deputies were armed.
Thomasset was the occupant of the vehicle. He testified that Deputy Valles told him he looked suspicious and asked if he had any drugs, knives, weapons or any illegal substances in the vehicle. Thomasset denied having any illegal items or substances, and at the request of the officers, he agreed that the two armed deputies could look inside his vehicle. Upon discovery of a baggie of cocaine in the console of the vehicle, Deputy Valles arrested Thomasset.
Thomasset's motion to suppress the cocaine was heard about a year after the arrest. Deputy Valles could not remember if he and the other officer had asked Thomasset to get out of his vehicle. But, on cross-examination of Thomasset, in an apparent attempt to show that the officers did not direct Thomasset to leave his vehicle prior to their request to search it, counsel for the State inquired of him: "And then they asked you if you would step out of the car, right?" Thomasset responded, "Yes." The State's counsel pursued the issue further inquiring, "They didn't tell you you had to get out of [sic] car, they just asked you if you would, right?" Thomasset responded, "They said something along the lines, `Would you step out of the car, sir?'"
In addition to not being able to remember if he asked Thomasset to step out of his vehicle, Deputy Valles acknowledged that because the arrest took place more than a year earlier, he could not recall such details as what he found in the console of the car other than the baggie of cocaine. He did say that prior to seizing the cocaine that Thomasset would have been free to leave the scene where the two armed officers had approached him.
The State did not present any evidence to indicate the officers had a well-founded, articulable suspicion of criminal activity sufficient to detain Thomasset, nor does it pursue this theory on appeal. Rather, the State seeks to sustain the trial court's denial of Thomasset's motion to suppress on the basis that the officers were merely engaged in a permissible consensual encounter with Thomasset. The State emphasizes the fact that Deputy Valles testified that Thomasset was free to leave at any time prior to seizure of the cocaine.
The issue we must resolve is whether the discovery of the cocaine in Thomasset's vehicle was the result of a consensual police-citizen encounter or an investigatory stop or detention by the police. The law governing these two levels of encounter is well established. In a consensual police-citizen encounter the police do not need a reasonable or founded suspicion to approach an individual and ask questions. In such an instance the individual is free to answer the questions or decline to do so and leave. Such an encounter does not intrude on an individual's Fourth Amendment rights. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). But before conducting an investigatory stop the police must have a well-founded, articulable suspicion that a person has committed, is committing, or is about to commit a crime. See § 901.151, Fla. Stat. (1997); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Simons. We have repeatedly stated that a well-founded, articulable suspicion of criminal activity is required before an officer may conduct an investigatory stop or detain an individual. Mere suspicion of criminal activity does not suffice. See, e.g., Jordan v. State, 544 So.2d 1073 (Fla. 2d DCA 1989).
Here, the initial contact between Thomasset and the officers appears to have been a police-citizen encounter. A significant identifying characteristic of a consensual encounter is that the officers cannot hinder or restrict a person's freedom *386 of movement to leave. See Popple v. State, 626 So.2d 185 (Fla.1993). Thomasset said he did not feel free to depart from a scene where armed deputies accosted him late at night on each side of his vehicle, but the pivotal point is whether the officers' contact with Thomasset became an investigatory stop when he was asked to step out of his vehicle.
In Popple, the court stated, "Whether characterized as a request or an order, we conclude that Deputy Wilmouth's direction for Popple to exit his vehicle constituted a show of authority which restrained Popple's freedom of movement because a reasonable person under the circumstances would believe that he should comply." 626 So.2d at 188. Here, an episode that began as a consensual encounter became an investigatory detention when the deputy requested Thomasset to step out of his vehicle. As Judge Parker observed in Zelinski v. State, 695 So.2d 834 (Fla. 2d DCA 1997), "if there was a consensual encounter, it became an investigatory stop at the point where Officer Cravens asked Zelinski to step out of the vehicle."
Because there was no articulable suspicion of criminal activity, the investigatory detention of Thomasset was illegal. The fact that he consented to the officers searching his vehicle does not necessarily remove the taint of the illegal stop. Illegal police action presumptively taints the voluntariness of a subsequently obtained consent to search. See Davis v. State, 744 So.2d 586 (Fla. 2d DCA 1999). Moreover, because the investigatory stop was illegal, it was incumbent on the State to establish by clear and convincing evidence that there was an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given. See Jordan v. State, 707 So.2d 338 (Fla. 2d DCA), review dismissed, 717 So.2d 538 (Fla.1998). Here the State did not establish any break in the chain of illegality.
Accordingly, we reverse the denial of the motion to suppress and vacate the order placing Thomasset on probation.
Reversed and remanded.
CAMPBELL, A.C.J., and GREEN, J., Concur.