778 So.2d 331 (2000)
Timothy A. RINEHART, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4642.
District Court of Appeal of Florida, Second District.
December 29, 2000.
*332 James Marion Moorman, Public Defender, and Joan Fowler, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Timothy A. Rinehart appeals from his judgment and sentence for possession of cocaine, asserting that the trial court erred by denying his dispositive motion to suppress. Based upon his meritorious contention that he was illegally detained, we reverse.
At approximately 4:30 a.m. on April 5, 1998, a Lee County deputy sheriff observed Mr. Rinehart and a young woman entering a parked vehicle. The car was parked to the right of a building that housed a business on the ground floor and apartments on the second floor. The deputy also observed two other people in the vicinity of the apartments. The deputy had received no reports of criminal activity or noticed any illegal behavior by any of the four. Because it was spring break, however, the deputy was on a routine check of businesses to protect against vandalism, and he decided to detain Mr. Rinehart and the others to ascertain what they were doing.
Arriving at the car, the deputy asked Mr. Rinehart and his companion what they were doing there, and they responded that they were visiting friends. Because their answers did not dispel his belief that he had come upon a loitering and prowling in progress, the deputy decided to interview them further. By separating Mr. Rinehart from the young woman outside the car, the deputy thought he would be able to discern whether their two stories matched, so he ordered the two to get out of the car. His plan was to allow them to leave once they had completed an approximately five-minute field interview.
Mr. Rinehart apparently had been drinking and was unable to hold his liquor, a fact resulting in two unfortunate circumstances. First, he fell to his hands and *333 knees and vomited. Second, when Mr. Rinehart arose the deputy noticed a plastic bag, later found to contain cocaine, on the ground next to where Mr. Rinehart's hand had been and in a spot that previously was bare. The deputy then arrested Mr. Rinehart.
The legality of the deputy's arrest of Mr. Rinehart for cocaine possession depends upon the legality of his detention. A law enforcement officer is not required to possess a founded suspicion to approach an individual to ask questions. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Once the deputy directed Mr. Rinehart to exit his vehicle, however, the nature of this police-citizen contact was altered. In Popple v. State, 626 So.2d 185, 188 (Fla.1993), a case with a similar factual genesis, the Florida Supreme Court found that, whether "characterized as a request or an order, ... Deputy Wilmoth's direction for Popple to exit his vehicle constituted a show of authority which restrained Popple's freedom of movement because a reasonable person under the circumstances would believe that he should comply." Thus, within Fourth Amendment parlance and analysis, the deputy's initial encounter with Mr. Rinehart turned into a Terry stop[1] or an investigatory detention. See Thomasset v. State, 761 So.2d 383, 386 (Fla. 2d DCA 2000).
Having decided that the deputy detained Mr. Rinehart, we must next decide whether the investigatory stop was supported by the officer's well-founded and articulable suspicion of criminal activity. See § 901.151, Fla.Stat. (1997); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). A mere feeling or belief that criminal activity is under way is insufficient. See Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984). Instead, the law enforcement officer's suspicion must possess "some factual foundation in the circumstances observed by the officer when those circumstances are interpreted in the light of the officer's knowledge." Peabody v. State, 556 So.2d 826, 827 (Fla. 2d DCA 1990).
Finally, then, we must determine whether the facts known to the deputy supported a founded suspicion that Mr. Rinehart was loitering and prowling, a crime that occurs when a suspect loiters or prowls "in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." § 856.021, Fla. Stat. (1997); see J.S.B. v. State, 729 So.2d 456, 457 (Fla. 2d DCA 1999). Where there is no evidence of an imminent threat to either persons or property no crime is committed. See R.M. v. State, 754 So.2d 849, 850 (Fla. 2d DCA 2000). Here, the deputy admitted that when he first observed Mr. Rinehart, he did not suspect that his behavior constituted an imminent threat to public safety. Rather, he wanted Mr. Rinehart and the others to fill out field interview cards so that he could contact them in case something unusual was discovered later.
In conclusion, the investigatory stop of Mr. Rinehart failed to meet the requirements demanded by our law of search and seizure; and, absent the illegal stop, the deputy would not have discovered the cocaine. Accordingly, we reverse the judgment and sentence and remand this case for the trial court to discharge the defendant.
GREEN, J., concurs.
ALTENBERND, A.C.J., Specially concurs.
ALTENBERND, Judge, Concurring.
I concur fully in the court's opinion. I write because I have gradually come to question whether it should ever be appropriate *334 for an officer to conduct a Terry stop based on reasonable suspicion of loitering. Because loitering is the crime of acting in a manner that causes "reasonable concern" for the safety of adjacent persons or property, a Terry stop for loitering is essentially a stop based on reasonable suspicion of reasonable concern. There is little to distinguish a "bare suspicion" of a burglary, which is not a valid basis for a Terry stop, from the reasonable suspicion of a reasonable concern for property, which apparently is a valid basis for a Terry stop for loitering. Given that loitering is a crime that regularly tests the limits of the United States Constitution, and that stops based upon suspicion of this crime frequently cause good police officers to find themselves as defendants in false arrest lawsuits, I think that police officers as well as the public would be better served by a rule that excluded this one crime from the list of offenses for which a Terry stop is justified.
The United States Supreme Court first authorized an investigatory stop in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Prior to Terry, the police often conducted similar stops by developing probable cause to arrest for loitering. Indeed, Terry reached the Supreme Court largely due to the fact that the officers suspected that Terry was going to commit a midday robbery, but failed to develop probable cause to charge loitering.
In Terry, a police officer observed Terry and his compatriot, Chilton, repeatedly walk past and peer into a store window, and then confer with a third man, Katz, leading the officer to believe the men were planning to rob the store. See id. at 5-6, 88 S.Ct. 1868. The officer approached the three men, identified himself, asked their names, and questioned them about what they were doing. Id. at 6-7, 88 S.Ct. 1868. When the men's responses did not dispel the officer's suspicions, the officer searched them for weapons by patting down their outer clothing. Id. at 7, 88 S.Ct. 1868. The officer felt guns through Terry's and Chilton's outer garments, seized the guns, and arrested Terry and Chilton for carrying concealed weapons. Id.
The trial court denied Terry's motion to suppress the guns, ruling that although the officer did not have probable cause to arrest the men before he patted them down, he had the right to pat them down because he had reasonable cause to believe that the defendants were conducting themselves suspiciously, and might be armed. Id. at 8, 88 S.Ct. 1868. The district court affirmed Terry's concealed weapons conviction. See State v. Terry, 5 Ohio App.2d 122, 214 N.E.2d 114 (1966). The United States Supreme Court granted certiorari to determine whether the trial court failed to protect Terry's Fourth Amendment rights by admitting the guns into evidence. See Terry v. Ohio, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 989 (1967).
The Supreme Court affirmed Terry's conviction, holding that the trial court correctly denied the defendant's motion to suppress the weapons. See Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer may initiate a "stop" and conduct a limited search of a suspect's outer clothing to discover weapons, and "any weapons seized may properly be introduced in evidence...." Id. at 30-31, 88 S.Ct. 1868.
Like the conduct that authorizes a Terry stop, the crime of loitering and prowling requires unusual or suspicious behavior. It requires proof that a person is loitering in a place, time or manner that is not usual for law-abiding citizens and "under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." § 856.021, Fla.Stat. (2000); see *335 also State v. Ecker, 311 So.2d 104, 106 (Fla.1975). Thus, a Terry stop for the crime of loitering is arguably a stop based on reasonable suspicion of reasonable suspicion that the detainee is about to commit a crime such as robbery or burglary.
If the offense in Terry had been loitering, I doubt that the Supreme Court would have authorized a detention based on reasonable suspicion. Justice Douglas commented in his dissent that Terry's conduct would in fact have constituted probable cause to arrest for loitering. See Terry, 392 U.S. at 35-36, 88 S.Ct. 1868 (Douglas, J., dissenting).
This court explained in State v. Kibbee, 513 So.2d 256, 258 (Fla. 2d DCA 1987), that the level of suspicion required for a Terry or investigative stop must reach the point of reasonable suspicion. "Mere or bare suspicion, on the other hand, cannot support a detention because it is no better than random selection, sheer guesswork, or hunch, and has no objective justification." Id. See also Herrmann v. State, 728 So.2d 266, 267 (Fla. 2d DCA 1999); Martin v. State, 658 So.2d 1153, 1155 (Fla. 2d DCA 1995).
Behavior that reaches the level of reasonable suspicion for the purpose of a Terry stop for the offense of burglary or robbery seems nearly equivalent with behavior that rises to the level of probable cause to arrest for loitering and prowling. See Joseph D. Robinson, A Loitering and Prowling Primer, 71 Fla. B.J. 59, 61 (Nov. 1997); State v. Coron, 411 So.2d 237 (Fla. 3d DCA 1982) (upholding loitering and prowling conviction for essentially Terry-stop behavior). If Terry allows a stop for suspected loitering at some lower level of suspicion, then a stop that is unconstitutional for the crime of burglary or robbery becomes constitutional for the crime of loitering. Like an inference upon an inference, the notion of a reasonable suspicion of a reasonable concern is too fraught with the risks of mistake and misuse to justify a constitutional stop. It simply permits stops based on mere suspicion, which we have long disapproved.
Commentators have recommended that police be permitted to conduct a Terry stop and frisk only on articulable suspicion of serious offenses, and not for suspicion of petty crimes such as loitering and disorderly conduct. See Clark D. Cunningham, The Lawyer as Translator, Representation as Text: Towards an Ethnography of Legal Discourse, 77 Cornell L.Rev. 1298, 1361 (1992) (citing, e.g., Wayne R. LaFave, Search and Seizure § 9.2(d) (2d ed.1986)). Such an extreme step seems unwarranted to me. However, if there is one crime that should be excluded from the list of crimes for which a Terry stop is permitted, that crime is loitering.
Loitering has long been an offense that occasionally tempts good police officers to exercise power in a manner that is inconsistent with the standards of our free society. See, e.g., Baker v. State, 754 So.2d 154 (Fla. 5th DCA 2000) (holding no reasonable suspicion justified Terry stop for suspicion of loitering where Baker was merely sitting in parked van at 3 a.m.). Loitering statutes often face close constitutional challenges.[2] They frequently are the source of civil lawsuits against police officers.[3] Conduct that is suspicious of *336 loitering is and should be a factor to consider in developing reasonable suspicion for some other crime, but our society, our police, and our courts would have fewer problems with the offense of loitering if officers were not permitted to engage in investigatory stops for this offense.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] See, e.g., Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Watts v. State, 463 So.2d 205 (Fla.1985).
[3] See, e.g., Kolender, 461 U.S. 352, 103 S.Ct. 1855; Lewis v. City of Irvine, 899 F.2d 451 (6th Cir.1990); Fields v. City of Omaha, 810 F.2d 830 (8th Cir.1987); Waldron v. McAtee, 723 F.2d 1348 (7th Cir.1983); Lytle v. Brewer, 77 F.Supp.2d 730 (E.D.Va.1999); Bernstein v. Aivazis, 584 F.Supp. 606 (D.N.J.1983); Johnson v. McTigue, 122 F.R.D. 9 (S.D.N.Y.1986); Lawrence v. Schaefer, 368 F.Supp. 840 (S.D.N.Y.1973); City of Hialeah v. Rehm, 455 So.2d 458 (Fla. 3d DCA 1984); City of Miami v. Graham, 311 So.2d 697 (Fla. 3d DCA 1975).