**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 28 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WENDY FAUSTIN,

      Plaintiff-Appellee,

v.

CITY AND COUNTY OF DENVER,
COLORADO; CHIEF TOM
SANCHEZ, in his official capacity as
Chief of the Denver Police
Department; LT. DONALD L. FINK,
in his official capacity as an officer
of the Denver Police Department;
SGT. W.P. HONER, in his official
capacity as an officer of the Denver
Police Department,

      Defendants-Appellants.

No. 00-1168

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 98-N-2554)

---

Stanley M. Sharoff, Assistant City Attorney, (J. Wallace Wortham, Jr., City
Attorney, with him on the briefs), Denver, Colorado, for the appellants.

Michael J. Deprimo, of AFA Center for Law & Policy, Tupelo, Mississippi
(Stephen M. Crampton, Brian Fahling, and Bryan J. Brown, of AFA Center for
Law & Policy, Tupelo, Mississippi, and Frank D. Mylar, Salt Lake City, Utah,
with him on the brief), for the appellee.

Before **BRISCOE, McWILLIAMS,** Circuit Judges, and **JENKINS** , District Judge. [*]

**BRISCOE** , Circuit Judge.

Defendants appeal the district court's decision to grant summary judgment to plaintiff Wendy Faustin on her claim under 42 U.S.C. § 1983 that her First Amendment rights were violated. We affirm in part, reverse in part, and remand.

## I.

On several occasions, Faustin displayed a banner at the Perry Street overpass in Denver. The banner measures three feet by ten feet and reads "Abortion kills children." Faustin and a friend stand on the sidewalk of the overpass to display the banner, each holding one end of the banner. Motorists in cars traveling on Highway Six, the roadway running under the overpass, can see the banner. The overpass consists of a road with a sidewalk running along one side. The sidewalk is public property, intended for pedestrian traffic. The sidewalk is approximately five feet wide, and a fence runs along it to prevent pedestrians from falling onto the highway below the overpass.

[*] The Honorable Bruce S. Jenkins, Senior United States District Judge, District of Utah, sitting by designation.

On December 5, 1997, Faustin was displaying the banner at the overpass when Denver Police Officer Lindsay approached her and asked her to stop displaying the banner. Faustin complied but asked Lindsay to cite the specific law she was violating. Sergeant Subia of the Denver Police arrived a short time later. The two officers reviewed a traffic manual but could find no law proscribing the display of the banner. The officers told Faustin they were unaware of any law she had violated by displaying the banner. On February 6, 1998, Faustin was displaying the banner at the overpass when Sergeant Reyes of the Denver Police informed her she could not display the banner. Faustin told Reyes she was finished for the day, and Reyes did not pursue the matter.

On March 6, 1998, Faustin was displaying the banner at the overpass when Denver Police Officer Blea told her she was violating the Posting Ordinance (Denver Municipal Code section 3-1). [1] Blea consulted with Lieutenant Fink, who noted Faustin's banner also violated the Outdoor Advertising Act. See Colo. Rev. Stat. § 43-1-401 *et seq* (1999). Following Faustin's March 6 encounter with the Denver Police, her attorney sent a letter

---

[1] Denver Municipal Code art. I, § 3-1 provides in relevant part:
   (a) It shall be unlawful to post, paint, or attach . . . in any manner any handbill, poster, advertisement or notice of any kind upon public property except by permission of the manager of the public works pursuant to established rules and regulations, or on private property except by permission of the owner or authorized agent of the owner of such property.

to then-Police Chief Michaud requesting assurances that Faustin would not be arrested for displaying the banner, but received no response.

On August 7, 1998, Faustin was displaying the banner at the overpass when she was approached by Denver Police Officer Awe. Within fifteen minutes, four other police cars arrived. Sergeant Honer cited Faustin for violating section 3-1. The charge was formally dismissed on October 9. The City Prosecutor determined that the posting ordinance did not apply because the banner was not affixed to anything. Faustin's attorney wrote to Police Chief Sanchez requesting assurance that Faustin would not be arrested for displaying the banner, but received no response.

On November 18, 1998, Assistant City Attorney Thomas sent a memorandum to Chief Sanchez advising him that Faustin's conduct was protected speech activity which could continue until and unless an actual public safety hazard was presented. Thomas also advised Chief Sanchez that any regulation of speech on the overpass required a compelling state interest and needed to be narrowly tailored.

Faustin filed her 42 U.S.C. § 1983 complaint on November 23, 1998. The complaint alleged that Denver's policy of prohibiting speech on the overpass, specifically application of section 3-1 to Faustin's display of the banner, was unconstitutional. As regards an alleged unlawful policy, custom or

4

practice, Faustin alleged in her complaint that "Defendant City and County of Denver police officers have, on at least four (4) separate occasions, approached Plaintiff and unlawfully demanded that she remove the handheld display of the sign from the Perry Street overpass. These repeated unlawful demands constitute a policy, custom, or practice of the Denver Police Department." Aplt. App. at 21. The complaint goes on to allege that "[a]s a direct and proximate result of Defendants' actions, and the customs, practices, and policies of the Denver Police Department, Plaintiff is chilled and deprived of her right to free speech [and free exercise of religion and free assembly]. Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm as a direct result of Defendants' conduct." Id. at 23. Faustin requested declaratory and injunctive relief, as well as nominal damages, costs, and fees. Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming the case was moot and that Faustin lacked standing because the charge against her had been dismissed and was unlikely to recur. The district court denied the motion.

The parties filed cross-motions for summary judgment. Defendants argued that Faustin properly could have been charged with violating Colorado

5

Revised Statute section 42-4-606(1). [2] Faustin responded that section 42-4-606(1) was vague and overbroad. In granting summary judgment in favor of Faustin, the district court held that section 3-1 was unconstitutional as applied to Faustin and that section 42-4-606 was facially unconstitutional because it was vague and overbroad as interpreted by defendants. See Faustin v. City & County of Denver, 104 F. Supp. 2d 1280 (D. Colo. 2000).

## II.

On appeal, defendants contend (1) Faustin lacks standing to challenge defendants' application of section 3-1 to her conduct because she seeks prospective relief for injuries that may not occur; (2) Faustin's constitutional challenge of section 3-1 as regards the section's application to her conduct is moot because the charge against Faustin was dismissed before this action was filed; (3) Faustin lacks standing to challenge the constitutionality of section 42-4-606 because she was never charged with violating that statute; (4) the district

---

[2] Colo. Rev. Stat. § 42-4-606(1) provides in part:

No person shall place, maintain, or display upon or in view of any highway any unauthorized sign, signal, marking, or device which purports to be or is an imitation of or resembles an official traffic control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic control device or any railroad sign or signal, and no person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising.

court erred in declaring section 42-4-606 facially unconstitutional; (5) the district court erred in holding the overpass walkway is a traditional public forum; and (6) the district court erred in finding municipal liability because there was no evidence to support a finding of a policy, practice, or custom of charging Faustin or others with violating section 3-1 when engaging in protected speech activities.

We review the grant of summary judgment de novo, applying the same legal standard as the district court. Mesa v. White, 197 F.3d 1041, 1043 (10th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the non-movant, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir. 1998).

### Standing and mootness

We review questions of standing and mootness de novo. See Colo. Farm Bureau Fed'n v. United States Forest Serv., 220 F.3d 1171, 1173 (10th Cir. 2000; F.E.R. v. Valdez, 58 F.3d 1530, 1532-33 (10th Cir. 1995). Those who seek to invoke the jurisdiction of the federal courts must satisfy the Article III requirement of having an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). "Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the

presentation of issues necessary for the proper resolution of constitutional questions." Id. (internal quotations omitted). Plaintiffs must show they have sustained or are immediately in danger of sustaining some direct injury, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical. Id. at 101-02. To establish standing, plaintiffs must show injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision. Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998).

Defendants contend Faustin lacks standing to challenge the application of section 3-1 to her conduct because the section 3-1 charge against Faustin was dismissed before this civil case was filed, and she is not being prosecuted under section 3-1 at this time. Defendants are partially correct. Faustin has standing to sue for damages based on her prosecution (including nominal damages, which she sought) and to seek declaratory relief with respect to her prosecution. See F.E.R., 58 F.3d at 1533 ("The Patients' claim for a declaratory judgment is similar to their claim for damages. In each, the Patients ask the court to determine whether a past constitutional violation occurred. In this dispute the alleged liability-producing act has already occurred. Because the question still exists as to whether the defendants violated the Patients' right to privacy, a controversy on the Patients' right to

8

privacy still exists. . . . Therefore, the claim for a declaration that the defendants improperly invaded the privacy of the Patients when they seized the psychiatrist's files is not moot and this claim will be discussed later with the claim for damages ."). However, she lacks standing to seek injunctive relief with respect to section 3-1. To have standing, Faustin must show a real and immediate threat that she will be prosecuted under this statute in the future. O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). In light of the city prosecutor's determination that Faustin was not violating the posting ordinance because she was holding the sign and it was not affixed in any way, it is not likely she will again be charged under section 3-1.

Defendants also contend Faustin lacks standing to challenge the constitutionality of section 42-4-606. Defendants are correct that Faustin cannot challenge section 42-4-606 as being unconstitutional in application. See Phelps v. Hamilton, 122 F.3d 1309, 1327 (10th Cir. 1997). The statute was not applied to Faustin and was not mentioned in her complaint.

Faustin argues her challenge of the statute is a facial challenge under the overbreadth doctrine. Facial challenges to statutes are sometimes permissible, especially where speech protected by the First Amendment is at stake. N.Y. State Club Assoc. v. City of N.Y., 487 U.S. 1, 11 (1988). To prevail on a facial attack, the plaintiff must demonstrate that the challenged law either could

9

never be applied in a valid manner or, "even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties." Id. (internal quotations omitted). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984).

Faustin offers no explanation of how the statute inhibits the speech of third parties. Rather, she argues that the statute unconstitutionally inhibits her own speech and that if she were prosecuted under it, the statute would be unconstitutionally applied to her. The overbreadth doctrine does not apply where there is no significant difference between the claim that the ordinance is invalid because of overbreadth and the claim that it is unconstitutional when applied to the plaintiff's own activities. See id. at 802 (holding plaintiffs lacked standing under overbreadth doctrine because they "have not attempted to demonstrate that the ordinance applies to any conduct more likely to be protected by the First Amendment than their own crosswires signs"). The overbreadth doctrine is inapplicable to Faustin's claim and does not provide standing for her to challenge the constitutionality of section 42-4-606.

10

## Traditional Public Forum

The First Amendment does not guarantee access to property simply because it is owned or controlled by the government. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983). There are three categories of government property: (1) traditional public fora; (2) designated public fora; and (3) nonpublic fora. Hawkins v. City & County of Denver, 170 F.3d 1281, 1286 (10th Cir. 1999).

Faustin argues the overpass is a sidewalk, which is quintessentially a public forum. Streets and parks "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. Comm. for Indus. Org., 307 U.S. 496, 515 (1939) (Roberts, J., concurring). The Supreme Court has observed that "[n]o particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public trust and are properly considered traditional public fora." Frisby v. Schultz, 487 U.S. 474, 481 (1988). Defendants rely on three cases to draw a distinction between sidewalks and walkways. Defendants contend these three cases are applicable here and render the overpass a nonpublic forum.

In United States v. Kokinda, 497 U.S. 720 (1990), the issue was whether

11

the sidewalk in front of the post office was a traditional public forum. The Court found it lacked the characteristics of a public sidewalk traditionally open to expressive activity. Specifically, it was not a thoroughfare, but a sidewalk constructed "solely to assist public patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." Id. at 728. The Court concluded that "the location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum." Id. at 728-29. Here, the overpass does not lead from a parking lot to the front door of a building, but enables pedestrian traffic to cross over a highway. It links the parallel sides of the street to one another, acting as a thoroughfare between them rather than providing access to a single remote location.

In Chicago Acorn v. Metropolitan Pier and Exposition Authority, 150 F. 3d 695 (7th Cir. 1998), the issue was whether the sidewalks on Navy Pier were traditional public fora. The court concluded that "[r]ather than being part of the city's automotive, pedestrian, or bicyclists' transportation grid, the sidewalks on the pier . . . are internal to the pier." Id. at 702. Here, the overpass is not in an isolated segment of town that is set apart from everything.

In Jacobsen v. Bonine, 123 F.3d 1272 (9th Cir. 1997), the court determined that the perimeter walkways of interstate rest areas are not

12

traditional public fora.  The court held that "[t]hese walkways are integral parts of the rest stop areas, which are themselves oases from motor traffic."  Id. at 1274.  Jacobsen is not similar to the present case as the overpass here is directly connected to other sidewalks and is part of general pedestrian traffic. We used a similar line of analysis in Hawkins.  We found that the walkways in the Galleria were not public fora because they were not "part of Denver's automotive bicycle or pedestrian transportation grid, for [the Galleria] is closed to vehicles, and pedestrians do not generally use it as a throughway to another destination."  170 F.3d at 1287.  Here, the overpass is part of the transportation grid, and pedestrians use it as a gateway to the other side of the highway.

In a case analogous to the case at bar, Lytle v. Brewer, 77 F. Supp. 2d 730 (E.D. Va. 1999), a group displayed anti-abortion signs on a pedestrian overpass running over a highway.  The court, noting that "nothing in the record indicates that the overpass was built for anything other than for what is expected – to aid the general public in crossing over the highway, similar to a sidewalk which protects pedestrians from traffic," concluded the overpass was a traditional public forum.  Id. at 736.  Defendants argue the overpass is distinct from a sidewalk because it is suspended in air.  However, the fact that the overpass (the roadway and its adjacent sidewalk) is suspended does not disqualify it as a traditional public forum.

13

## Policy, practice, or custom

The district court treated this case as a challenge to section 3-1 and section 42-4-606. However, closer analysis of the complaint, the motions for summary judgment, and the briefing before us indicates that Faustin also challenges defendants' policy of prohibiting all expression on overpasses. Defendants admit this policy exists. The policy is subject to First Amendment challenge. See Hawkins, 170 F.3d at 1286 ("The First Amendment applies not only to legislative enactments, but also to less formal governmental acts, such as city policies.").

Faustin has standing to challenge the policy. See Hawkins, 170 F.3d at 1286. She has been asked to remove her banner on four separate occasions. Further, she intends to continue to display her banner at the overpass, which means there is a real and immediate threat that defendants will continue to enforce their policy against her. Faustin has shown injury in fact and has shown a causal relationship between the injury and the challenged action of the defendants. Further, she has shown a likelihood that the injury will be redressed by a favorable decision. The district court should address this issue on remand.

## III.

We REVERSE the district court's holding that Faustin has standing to

pursue injunctive relief to prevent future application of section 3-1 to her banner activities, but AFFIRM the district court's holding that she has standing to pursue declaratory relief    and nominal damages regarding defendants' past enforcement of section 3-1 against Faustin.  We REVERSE the district court's holding that Faustin's claim was not moot with respect to injunctive relief, but AFFIRM with respect to declaratory relief and nominal damages    .

We REVERSE the district court's holding that Faustin has standing to challenge section 42-4-606 and its holding that 42-4-606 is unconstitutional. We AFFIRM the district court's holding that the overpass is a traditional public forum.  We REMAND to the district court for further proceedings to address whether defendants' policy violates Faustin's First Amendment rights.

00-1168, <u>Faustin v. City & County of Denver</u>

**JENKINS**, Senior District Judge, concurring in part and dissenting in part.

I agree with much of what the lead opinion says. I depart only as to three issues.

**Constitutionality of Denver Mun. Code art. I, § 3-1**

The lead opinion affirms the district court's declaration that "the Posting Ordinance (Denver, Colo. Mun. Code art. I, § 3-1 [1950]) is unconstitutional as applied to plaintiff's protesting activities on the Perry Street Overpass and cannot be enforced to prevent plaintiff from engaging in those activities." <u>Faustin v. City & County of Denver</u>, 104 F. Supp. 2d 1280, 1290 (D. Colo. 2000).[1]

The first step in deciding whether a statute or ordinance is unconstitutional is to determine whether a genuine conflict exists between the statute or ordinance and the constitutional text. <u>See, e.g.,</u> <u>Public Citizen v. Department of Justice</u>, 491 U.S. 440, 465 (1989) ("'[E]ven if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting <u>Crowell v. Benson</u>, 285 U.S. 22, 62 (1932))); <u>ANR Pipeline v. Lafaver</u>, 150 F.3d 1178, 1186-87 n.8 (10th Cir. 1998) ("[F]ederal courts should avoid reaching the merits of a constitutional issue when the case may be decided on statutory grounds.").

---

[1]As described above, Ms. Faustin was issued a citation under the Denver Posting Ordinance, Denver Mun. Code, art. I., § 3-1 that a prosecuting attorney later determined to have been improvidently issued. By its own terms, § 3-1 did not apply to Ms. Faustin's conduct because she did not "post" her banner by affixing it to any public property. The citation was dismissed prior to trial.

Section 3-1 extends only to signs or banners that are "posted"—physically painted, attached, or affixed to public property. The district court acknowledged this. 104 F. Supp. 2d at 1288 ("the terms of the statute punish only physical attachment of notices to other property"). Section 3-1 thus cannot be applied to Ms. Faustin's conduct in displaying her banner unless she "posts" the banner by affixing it to the overpass structure. She has expressed no inclination to do that.

When read according to its plain language, § 3-1 simply does not reach Ms. Faustin's expressive activity, and no genuine conflict exists between the ordinance and the Constitution's guarantee of free expression. The district court need not have decided whether § 3-1 is "unconstitutional as applied" because § 3-1 simply cannot be "applied" to Ms. Faustin's conduct. There existed no actual controversy as to the application of § 3-1 warranting the declaratory relief granted by the district court and now affirmed by the panel.[2]

The district court's declaratory judgment as to the unconstitutionality of § 3-1 should be vacated.

**Damages Liability for the § 3-1 Citation**

---

[2]The question whether § 3-1 is "unconstitutional as applied to plaintiff's protesting activities," 104 F. Supp. 2d. at 1290, is distinct from whether the defendants infringed on her First Amendment rights on August 7, 1998 by issuing her a citation under an inapplicable ordinance. F.E.R. v. Valdez, 58 F.3d 1530, 1533 (10th Cir. 1995), involved declaratory relief on an issue of the latter sort, "whether a past constitutional violation occurred," not declaratory relief on the broader question of unconstitutionality of a statute or ordinance, as was granted by the district court in this case.

-2-

Municipalities may be held liable for violations of civil rights under § 1983 if such violations result from the "execution of a government's policy or custom." Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 694 (1978). Denver is correct that the district court erred to the extent that it granted summary judgment in favor of Ms. Faustin on the theory that Denver is liable in damages for violating her constitutional right to free expression pursuant to a policy, practice, or custom of charging Ms. Faustin and others with violating § 3-1.[3] The uncontroverted facts set forth in the district court's opinion do not establish the existence of a city policy, practice, or custom to enforce § 3-1 against Faustin and others—an ordinance that Denver readily concedes does not apply to her conduct. Ms. Faustin received one citation issued by one officer, which was dismissed by the city two months after it was issued. See 104 F. Supp. 2d at 1283.[4]

The lead opinion acknowledges that this issue was raised on this appeal, but offers no explanation why the district court's error should now be overlooked.

Absent a showing of a constitutional violation that occurred as a matter of

---

[3]The district court granted summary judgment in Faustin's favor because it found that her constitutional rights were violated "by defendants' application of the Posting Ordinance,"104 F. Supp. 2d at 1288, implying that the defendant City and County of Denver must have had a policy, custom or practice of applying § 3-1, even though none appears in the record.

[4]It appears that she has sued the issuing officer, Sgt. W.P. Honer, in "his official capacity as an officer of the Denver Police Department." Remembering that an action against a government official in his official capacity is an action against the government entity he represents, Kentucky v. Graham, 473 U.S. 159, 166 (1985), the recovery even of nominal damages in this case seems problematic.

municipal policy, practice or custom, it remains doubtful whether Ms. Faustin is entitled to judgment as a matter of law on the § 1983 claim against Denver for damages—even nominal damages—involving § 3-1 and the issuance of the August 7, 1998 citation. Yet that is what the lead opinion appears to affirm.

**Denver's "Policy, Practice, or Custom" re: Overpasses**

The district court ruled that Denver's "blanket prohibition on <u>all expressive activities</u> on any overpass makes the Unauthorized Display Statute impermissibly overbroad," rendering the statute unconstitutional. <u>Id.</u> at 1289 (emphasis in original). The lead opinion reverses the district court's grant of summary judgment as to the Colorado Unauthorized Display Statute, Colo. Rev. Stat. § 42-4-606, on the grounds that Ms. Faustin lacks standing to challenge the statute. I concur in this court's reversal of that judgment.

However, we remand the case for further proceedings concerning Denver's "longstanding policy of prohibiting <u>all</u> speech and expressive activity on highway overpasses," a policy that was recognized but not separately addressed by the district court. 104 F. Supp. 2d at 1288, 1289 (emphasis in original). Defendants admit this policy exists, and assert that the policy "mirrors" state and federal laws regarding signs on highways, pointing specifically to Colo. Rev. Stat. § 42-4-606. (Appellants' Brief at 8.)

The lead opinion treats the city policy as a <u>policy</u>, not merely as an official construction of the statute, and likely is correct in doing so. City policies may be subject

-4-

to First Amendment challenge, as <u>Hawkins</u> instructs.  <u>Hawkins v. City and County of Denver</u>, 170 F.3d 1281, 1287 (10th Cir. 1999).

However, the lead opinion affords Ms. Faustin standing to challenge the city policy for overbreadth at the same time that it denies her standing to challenge the underlying statute on the same grounds, mirror image or not.  In her brief, Ms. Faustin makes substantially the same overbreadth argument as to the policy that she makes as to § 42-4-606.  (<u>Compare</u> Appellee's Brief at 26-28, <u>with</u> <u>id.</u> at 35-36, 40-41.)

Moreover, it does not appear from the record now before us that Ms. Faustin actually pleaded any First Amendment challenge to the policy <u>as a policy</u> before the district court.  Perhaps such a claim could be amended into her existing pleadings, but to date, this has not been done.  Amendment of pleadings falls within the purview of the district court under Fed. R. Civ. P. 15.  No comparable Federal Rule of Appellate Procedure empowers this court to allow such amendment, or to rule in the first instance on standing to assert claims not pleaded below.  <u>See</u> <u>Hicks v. Gates Rubber Co.</u>, 928 F.2d 966, 970 (10th Cir. 1991).

It seems to me that this court should remand the question of Ms. Faustin's standing to challenge the <u>policy</u> based on her asserted ground of <u>overbreadth</u>[5] to be determined in

---

[5](<u>See</u> Appellee's Brief at 28 (Denver's "policy is not narrowly tailored, and thus is unconstitutionally overbroad").)  The portion of the complaint quoted by the lead opinion alleges that the four incidents of contact with individual officers ending with the issuance of the § 3-1 citation "constitute a policy, custom, or practice of the Denver Police

(continued...)

-5-

the first instance by the district court, based upon proper pleadings and an adequate record. See Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir. 1997) ("'[i]t is a long settled principle that standing alone cannot be "inferred argumentatively from averments in the pleadings," but rather "must affirmatively appear in the record."'" (quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (citations omitted)). The district court was not presented with a challenge to the city policy, separate and apart from the Posting Ordinance or the statute, at the time that it ruled on the parties' summary judgment motions, and should have the first opportunity to address the question of standing as raised in that context.

---

[5] (...continued) Department"—an obvious attempt to plead § 1983 municipal liability for the actions of the individual officers rather than a facial challenge to a content-neutral city policy affecting all expressive activities on overpasses. Plaintiff's claim seems to be evolving as this appeal progresses.